UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
HUMBERTO CASTRO

                              Plaintiff,                          **MEMORANDUM AND ORDER**

-against-                                                  CV 11-5071 (GRB)


UNITED STATES POSTAL SERVICE, *et al.*

                              Defendants.
-----------------------------------------------------------X

**GARY R. BROWN, United States Magistrate Judge:**

       In this action brought pursuant to the Federal Tort Claims Act, plaintiff Humberto Castro ("Castro") seeks recovery for injuries he allegedly sustained in a fall at a facility—known as the Metro New York Logistical & Distribution Center ("L&DC")—which was leased by the United States Postal Service ("USPS"). Castro, who worked as a contract truck driver, slipped on a piece of cardboard on an exterior staircase at the L&DC. The liability phase of this trial was presented to a jury between January 14 and 17, 2014. During summations, plaintiff settled his claim against defendant Steel Los III on January 17, 2014. *See* Docket Entry ("DE") 90.

       Following deliberations, the jury found that an unsafe condition existed on the exterior staircase, that the USPS knew or should have known about the condition, had sufficient time to correct the condition and that negligence by the USPS was a substantial factor in causing plaintiff's accident. DE 94. The jury apportioned liability as follows: plaintiff: forty percent (40%); USPS: forty percent (40%); and defendant Steel Los III: twenty percent (20%). *Id.* As the plaintiff has no right to a jury trial under the Federal Tort Claims Act, the jury's verdict is only advisory against the United States. 28 U.S.C. § 2402; *Birnbaum v. United States*, 588 F.2d

1

319, 335 (2d Cir. 1978). On the record, the undersigned reviewed the jury's determination, rejected the Government's application to set it aside and ultimately adopted the jury's findings in their entirety. *See* DE 95; Jan. 17, 2014 Tr. The Court conducted a bench trial on the issue of damages, which began on June 10, 2014, continued over a series of dates, and concluded on August 20, 2014. *See* DE 104; 105; 108. Both sides were afforded the opportunity to submit proposed findings of facts and conclusions of law, along with supporting papers, all of which have been considered in reaching the findings contained herein. *See* DE 110-116.

### Damages Sought

Plaintiff seeks damages totaling approximately $1.8 million, categorized as follows:

- Past lost wages: $188,000
- Future lost wages: $550,000
- Past medical costs: $198,300.30
- Future medical expenses: $120,000
- Past Pain & Suffering: $225,000
- Future Pain & Suffering: $525,000

DE 110 at 19-21. Plaintiff further notes that any damages award "shall be subject to a post-trial collateral source and offset hearing." *Id*. at 17. The Government disputes this request for an award, ultimately contending that plaintiff has failed to establish causation, and is thus entitled to no damages. USPS Proposed Findings, DE 111 at 15-17. I examine these claims below:

### Medical Expenses

As to the amount of past medical expenses, the parties have stipulated that the cost of past medical expenses amounts to $198,300.30. See DE 110 at 21; DE 113 at 9. Nevertheless, the Government argues that "overwhelming objective medical evidence undermines plaintiff's

claim that his fall at the L&DC in November 2010 caused the cervical and spine herniations, and thus has failed to prove that he is entitled to damages." DE 110 at 16. This assertion by USPS largely emanates from a single, albeit misplaced, concept: that plaintiff had a "history of low back pain dating back to before June 2007," and that this history, together with the purported misreporting of this history to treating and consulting physicians, undermines plaintiff's case. DE 112-1 at ¶ 63; *see also, e.g.*, *id.* at ¶ 51 ("no evidence in the record that Plaintiff disclosed his history of back problems to Dr. Basra");¶ 59 ("no evidence in the record that Plaintiff disclosed his history of back problems to Dr. Weiland").

The difficulty with this assertion is that there is insufficient evidence of record to establish that the plaintiff did, in fact, have a significant pre-accident history of back problems. The Government points principally to an emergency room record from 2007. *See* Ex. O. While this record does bear a notation of "low back pain/ache," a review of the entire document reveals that the plaintiff went to the emergency room with complaints of rectal bleeding arising from hemorrhoids. *Id.* The mention of low back pain appears secondary to the chief complaint of rectal bleeding and could, arguably, have been a symptom of hemorrhoids. *Id.* The USPS's citation to a 2009 chest x-ray is similarly unavailing insofar as defendant argues it demonstrates a history of back pain, as there is nothing about the degenerative changes noted that suggests that these changes were producing symptoms. *See* Ex. T.

Of course, under New York law, it remains the plaintiff's burden to establish that his "injury was proximately caused by the defendant's" negligence. *Japan Airlines Co. v. Port Auth. of New York & New Jersey*, 178 F.3d 103, 109 (2d Cir. 1999). With respect to the most significant injury in question—the herniation of several cervical discs that provided the basis for a cervical spinal fusion—there is conflicting expert medical testimony as to whether these

injuries resulted from the fall or from degenerative changes and, on balance, the weight of this evidence seems to support degenerative causation. *See* Ex. O (Post-accident radiological studies showing only degenerative changes and no traumatic injury). However, the plaintiff proved, indisputably, that he suffered at least *some* back injury from the accident. *See* USPS Proposed Finding ¶ 46 ("The Postal Service concurs that Plaintiff sustained cervical and lumbar spine strains and sprains as a result of his fall at the L&DC").

Thus, given that the plaintiff established that he suffered some back and neck injury as a result of defendant's negligence—and there has been no effort here to allocate the past medical expenses between the various treatments undergone in this case—it is appropriate to award the stipulated sum of $198,300.30 to the plaintiff for past medical expenses.

As to claim for future medical expenses, the $120,000 claimed represents an estimate by Dr. Basra as to the costs of a procedure that he has recommended to the plaintiff, to wit: a further spinal fusion in the lumbar area. DE 110 at ¶ 44. However, the uncontroverted evidence of record indicates that plaintiff has refused such treatment, as a result of his dissatisfaction with the limitation of movement arising from the cervical spinal fusion he has undergone. Aug. 20, 2014 Tr. 24. There is no indication in the record that the plaintiff will, in fact, undergo this additional procedure. As a result, the claim of future medical expenses is far too speculative to justify an award.

**Pain & Suffering**

While an award of pain and suffering in this matter is warranted, "[a]ssigning dollar amounts to pain and suffering is an inherently subjective determination." *Berroyer v. United States*, 990 F. Supp. 2d 283, 309 (E.D.N.Y. 2014) (quoting *Marcoux v. Farm Service & Supplies, Inc.,* 290 F.Supp.2d 457 (E.D.N.Y.2003)). As one court observed:

> Ultimately, "[t]here is no precise rule for determining pain and suffering and a trier of fact is bound by a standard of reasonableness in light of all the evidence." *Estevez v. U.S.*, 72 F.Supp.2d 205, 208 (S.D.N.Y.1999). When determining pain and suffering awards, courts often look to awards in similar cases. *See, e.g., Gasperini v. Ctr. for Humanities, Inc.,* 518 U.S. 415, 425, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996); *see also Estevez v. U.S.*, 72 F.Supp.2d at 208 (prior verdicts may guide and enlighten the court); *Coniker v. State,* No. 86901, 2002 WL 32068270, at *22 (N.Y.Ct.Cl. Dec.23, 2002) (courts look to other awards given).

*Furey v. United States*, 458 F. Supp. 2d 48, 56-57 (N.D.N.Y. 2006). In *Berroyer,* Judge Spatt considered such an award in a slip-and-fall case involving mild spinal concussion which limited plaintiff's ability to walk, and awarded $350,000 for past pain and suffering and $250,000 in future pain and suffering. 990 F. Supp. at 309. Importantly, though, Judge Spatt considered evidence from a psychiatrist stating "there was no evidence that the plaintiff was faking his injury or that [he] was a malingerer or that the plaintiff was exaggerating his injury." *Id.* at 307. Moreover, in cases involving spinal injuries, "the range of damage awards by courts and juries varies widely depending on the facts presented in the particular case." *Robinson v. United States*, 330 F. Supp. 2d 261, 297 (W.D.N.Y. 2004).

In this case, however, there is precious little objective evidence of plaintiff's pain and suffering.[1] Rather, as is so often the case with this kind of soft tissue injury, virtually all of the evidence of record turns on the plaintiff's subjective reports of pain, both in the form of testimony as well as his reporting to treating and examining physicians, which in turn informs their expert opinions.

At the same time, there is significant evidence that the plaintiff has exaggerated and misrepresented the pain resulting from his injuries and the limitations imposed upon his

---

[1] One of the few data points in this regard is plaintiff's reported use of pain medication which I have considered in

5

activities. Although one of the defendant's experts reported that he did not believe that the plaintiff had engaged in malingering[2] during the independent medical examination, Jun. 27, 2014 Tr. 49-50, a review of the record as a whole suggests otherwise.

By way of example, plaintiff testified at his deposition in September 2012 that, as a result of this injuries, he "couldn't do any yard work." Aug. 20, 2014 Tr. 49. Only four days later, he told his treating physician that he was "very sore because [he] had done a lot of yard work." *Id.* Within a month, during an independent medical exam in connection with a workers' compensation claim, Castro told the consulting physician he was unable to do any yard work. *Id.* Finally, at trial, defendant presented a surveillance video showing plaintiff weeding his property for about thirty minutes. Ex. HH. When confronted at trial with these obvious contradictions, plaintiff attempted to deflect the problem by indicating—quite forcefully—that he considered pulling weeds "therapy" rather than yard work. *Id.* at 59.

Plaintiff's reporting of back pain and related difficulties to medical providers also demonstrates significant—and selective—inconsistencies. Progress notes of his treating oncologist from November 2010 through September 2011 consistently reflect that plaintiff reported *no* musculoskeletal or neurologic symptoms—including express reporting of "no back pain," "no tingling sensations," and "no stiffness." *See* Ex. W. In February and March 2011, by contrast, when twice examined by a consulting workers' compensation physician, the plaintiff complained of "constant lower back pain," and "numbness and tingling." Ex. L.

This sort of dissembling—and there were other examples—significantly undermines

---

reaching my conclusions here.

[2] The Oxford English Dictionary defines "malinger" as "[t]o pretend or exaggerate illness in order to escape duty or work; to feign or produce physical or psychological symptoms to obtain financial compensation or other reward." *See* www.oed.com.

plaintiff's subjective reporting of pain and disability and, by extension, the opinions of the medical experts who have to rely upon his subjective reports. Furthermore, I found plaintiff's testimony fraught with exaggeration and inconsistencies. There is also evidence suggesting that the plaintiff's injuries as a result of the accident have largely resolved. *See, e.g.*, Jun. 27, 2014 Tr. 68:4-11.

Nevertheless, it is clear that the plaintiff did suffer some pain—at least for a time—as a result of the subject incident. In a vacuum, the significant course of medical intervention—both conservative and surgical—could suggest a pain and suffering award that equal to or greater than that of the past medical expenses discussed above. However, given the reasons to question plaintiff's subjective complaints of pain, upon which his entire case rests, as well as the failure to prove causation as to the cervical disk herniations, an award of $50,000 represents, in this Court's view, sufficient damages to compensate him for his past pain and suffering. Furthermore, plaintiff has made no showing of future pain and suffering that has been proximately caused by the subject accident, and there is evidence that issues proximately caused by the accident have resolved. As such, I find that no award for future pain and suffering is appropriate here.

**Lost Earnings**

Plaintiff's claim for lost earnings represents, perhaps, the most difficult determination in this matter. While lost earnings are generally a more straightforward calculation, an unusual fact here complicates the determination. Following the accident at issue, radiological studies produced little or no evidence of traumatic injury from the fall. See Ex. O at 218-19 (Nov. 12, 2010 X-ray of cervical spine); 213-15 (Nov. 12, 2010 CT scan of Neck with Contrast); 211-12 (Nov. 13, 2010 MRI of Neck); 209-10 (Nov. 15, 2010 CT scan of lumbar spine without

7

contrast); 192-93 (Nov. 19, 2010 CT scan of neck). Those studies did, however, demonstrate that plaintiff was suffering from a massive malignant tumor in his neck which required immediate treatment. Absent this fortuitous discovery, according to his oncologist, plaintiff had a life expectancy of "less than a year." Aug. 20, 2014 Tr. 30-32. As a result, treatment of plaintiff's claims of back and neck pain were deferred pending a course of radiation and chemotherapy, which, fortunately, left plaintiff cancer free. That treatment would, according to his oncologist, have left plaintiff unable to work from the date of the accident through in or about July 2011. Vacirca Dep. at 16; Aug. 20, 2014 Tr. 31 (plaintiff "agreed that everything that was stated in the [Dr. Vacirca's deposition] transcript . . . is actually the words that Dr. Vacirca said.").

Plaintiff predicates his claim for past and future lost wages solely upon this testimony, and his own testimony concerning his intentions regarding continued employment. Plaintiff testified, over the Government's proper objection of speculation and competence, that, hypothetically, "after six months of the [cancer] treatment, I would say I would have been back to work within the next month." Aug. 20, 2014 Tr. 17. Or phrased another way, the plaintiff testified:

> Q. So we know as of the date of the surgery in September of 2011, by that point, at least, your cancer treatment would have stopped, correct?
> A. Yes.
> Q. And it would have been done, correct?
> A. Yes, and back to work.

*Id*. at 18. In terms of retirement, plaintiff, who is now 64 years old, testified that he intended to work for the "rest of my life. Until I was unable to work anymore." *Id*. at 19. In an effort to buttress this showing, he noted that, concerning his coworkers "[a]t least two I know of that were over 70." *Id*. at 20. Plaintiff offered no expert testimony to support any of these assertions.

Based on this showing, plaintiff seeks $188,000 in past lost wages and $550,000 in future lost wages. Both of these figures are calculated—without appropriate discounting or adjustments, by multiplying $55,000, an amount purportedly "customarily earned per year by plaintiff,"[3] and by the time that has elapsed since the end of his cancer treatment, and assuming a future work history of another ten years. *See* DE 110 at ¶¶ 3, 6.

The problem with this analysis is that the evidence simply does not support plaintiff's subjective reporting concerning his hypothetical intent to return to work following his cancer treatments or his idiosyncratic claim that he planned on working until he lost all capacity to do so. In applying for disability benefits from the Social Security Administration,[4] plaintiff reported being unable to work both because of his "back" problems as well as "Cancer Stage 4." Ex. Z. Evidence of record demonstrates that plaintiff can perform "light, sedentary work." *See* Ex. Y at 386-87; Weiland Dep. 35:2, 35:23-26. Indeed, his treating physicians opined in June 2011 that any total disability was "temporary." Ex. K at 111. These expert assessments find further support in the surveillance video presented at trial, which shows plaintiff capable of certain physical work. Nevertheless, plaintiff has made no attempt to obtain work of any kind. Aug. 20, 2014 Tr. 21. Furthermore, as to commercial truck driving, an avocation which plaintiff reportedly "loved," though he claims he could not pass the physical required to renew his license, he admits never having tried to do so. Aug. 20, 2014 Tr. 15:19-22; 49:23-24.

With regard to plaintiff's future earnings, while expert testimony is certainly not required, it would have been helpful here. For example, given that commercial truck driving can be a

---

[3] There is some confusion as to this figure. The only documentary evidence concerning plaintiff's income shows a gross income of about $48,000 in 2009, the last full year that plaintiff worked. *See* Ex. BB.

[4] Curiously, though he testified at trial to having worked in a pet store for the 8-10 years preceding his employment as a driver at the LD&C in 2004, Aug. 20, 2014 Tr. 5, records relating to plaintiff's application for disability benefits

9

physically demanding job, plaintiff's prognostication that he would have worked well into his seventies may be statically suspect. By way of example—and this is certainly no substitute for expert analysis—a recent Bureau of Labor Statistics report demonstrates that of 1.7 million individuals employed in truck transportation, only about 100,000 were aged 65 or older. *See* Employed persons by detailed industry and age, 2013 annual averages, BUREAU OF LABOR AND STATISTICS (Mar. 23, 2015 11:30 AM), *http://www.bls.gov/cps/industry_age.htm*. At the same time, this plaintiff's apparent disinclination to work further undermines his claims to future wage loss.

A loss of earnings claim "must be ascertainable with a reasonable degree of certainty and may not be based on conjecture." *Berroyer v. United States*, 990 F. Supp. 2d 283, 310 (E.D.N.Y. 2014) (*citing Glaser v. County of Orange*, 864 N.Y.S.2d 557, 559 (2d Dep't 2008)); *Davis v. City of New York,* 693 N.Y.S.2d 230 (2d Dep't 1999) (The absence of "quantitative evidence . . . in a vocational setting" or "testimony by an economist qualified to assess work-life expectancy or employment opportunities" precluded a future earnings award). Moreover, "a claim for lack of earnings must be established with reasonable certainty." *Berroyer,* 990 F. Supp. 2d at 310 (*citing Gomez v. City of New York*, 688 N.Y.S.2d 661, 662 (2d Dep't 1999)). Here, plaintiff has simply failed to meet this standard. Plaintiff's assertions that, absent the complained of injury, he would have (1) returned to work immediately upon completing cancer treatments and (2) continued work for another ten years hence, are unpersuasive particularly in light of the plaintiff's conduct to date. These contentions are simply far too speculative to support either a past or future lost earnings award.

---

indicates that he worked as a driver for an outfit called "HNL Trucking" between 1985 and 2004.

**Conclusion**

Based on the foregoing, I find that:

1. Plaintiff has sustained past medical expenses of $198,300.30;

2. Plaintiff has established damages for past pain and suffering in the amount of $50,000;

3. Plaintiff has failed to meet his burden to warrant any award for future medical expenses, future pain and suffering, or past or future loss of earnings.

If the parties agree on the collateral source offsets and comparative negligence computations, they should submit a stipulation on the proper amount for which judgment shall be entered, or failing that, propose dates for an offset hearing within seven (7) days of the date of this Order.

**SO ORDERED**

Dated: Central Islip, New York
    March 23, 2015

　　　　　　　　　　　　　　　　　　　　 /s/ Gary R. Brown
　　　　　　　　　　　　　　　　　　　　GARY R. BROWN
　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge